We'll move on to the third case of the day, which is Zall v. Standard Insurance Company, Appeal Number 22-1096. And we'll hear first, sorry I've got the wrong list, from Ms. Tilke. Good morning, Your Honors. May it please the Court, Brooke Tilke for Appellant Dr. Eric Zall. This morning we're here requesting that this Court reverse the District Court's grant of summary judgment to Appellee Standard Insurance Company. As you know, this case involves disability benefits under a policy with the Standard and the Standard's failure to generate it on appeal before denying said appeal in 2020. Prior to the onset of his disability, Dr. Zall worked as a dentist for over 20 years, but unfortunately was forced to seek working in this capacity in 2013 due to medical conditions, most notably chronic neck pain. Dr. Zall received long-term disability benefits through the Standard for a number of years until his claim was denied in 2019. The main issue in this appeal is whether the current version of 29 CFR 2560 503.1 paragraph H41, which requires a plan administrator to provide the claimant with any new or additional evidence generated by the plan on appeal, applies to Dr. Zall's claim for LTD benefits. What authority does the Department of Labor have to impose retroactive regulations? Well, Your Honor, we contend that this regulation in this case is actually not retroactive. The reason for that being that this regulation went into effect in 2018, and the Standards conduct that is challenged here, failing to provide Dr. Zall with that peer review report, actually took place in 2020. So really, there is no retroactive application here. The Supreme Court in Landgraf has defined retroactivity as a new rule or statute that provides a new provision attaching new legal consequences to events completed before its enactment, and the Standards actions were taken after the enactment of this regulation. And here we're talking only about procedural changes where we typically expect those to be applied immediately. I'm sorry, Your Honor, could you rephrase the question? There's a difference in analyzing questions of retroactivity. There's a difference whether about whether we're talking about attaching substantive liability as in the Bowen against Georgetown case, or whether we're just talking about a change in procedure. Go back to Landgraf talked about Bradley against Richmond, and usually is not a problem applying current procedural law to current procedures. Right, Your Honor. So first of all, the plain language of the regulation indicates that paragraph H41 applies to all claims filed on or after 2002, except for some enumerated exceptions. In interpreting this regulation, this court must first look to whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in this case, and in this inquiry the court will look to the entire text of the regulation, its purpose and context, and precedents or authorities that can inform this analysis. Here the plain language of the regulation in paragraph P1 indicates that except as paragraphs as provided in paragraphs P2, P3, and P4 of the section, the section shall apply to all claims filed under a plan on or after January 1st, 2002. None of these exceptions apply to Dr. Zall's case. Paragraph P2 relates to claims filed under a group health plan. Paragraph P3 enumerates certain sections for disability plans that will apply after April 1st, 2018, but importantly this paragraph does not include paragraph H4, which is the paragraph at applies to disability claims that were filed from a period of January 18th, 2017 through April 1st, 2018, which also does not apply to Dr. Zall's claim. So counsel, the defendant is telling us that the sort of odd interregnum from the 15 months or so of the new administration, that if we agree with like Dr. Zall's are subject to the new reg, later claims filed after April 1st of 2018 are subject to the new reg, but then there's this 15 month period where they're subject to this transition rule. It does seem kind of odd. Right, Your Honor. Well, the Department of Labor did create this period as kind of a transitionary period in order to allow insurance companies to have time to avoid any unfair results from the insurance companies having to switch their procedures with little notice or a little transitionary period. Additionally, this regulation went through several rounds of comments and revisions and everything, and this is how the regulation ended up. And this court has noted that courts cannot rewrite statutes and regulations merely if they imperfectly express congressional intent or wise social policy. As such, it's clear that the plain language does indicate this result. When did you all learn of Dr. Alpert's report? Right, Your Honor. Well, so we received, so the standard had sent a letter to our firm on August 20th that advised that they had received the peer review report from Dr. Alpert. That's when they sent it. That's the date on the letter. That's the date they sent it. We did not receive that letter until August 31st, 2020, likely due to some delays in the mail due to COVID. And actually, they issued their denial on August 29th, which we did not then receive until a week or so after. So, actually, Dr. Zahl's claim had been denied by the time that we got the letter saying that they had received the peer review report. If we agree with you that there's a procedural error here with respect to Dr. Alpert's report, what's the remedy? Right, Your Honor. Well, we would be looking for a reverse of the district court's grant of summary judgment and then a remand to the district court to determine whether Dr. Zahl is entitled to benefits. And at that point, the district court could decide to provide Dr. Zahl with an opportunity to respond to that report. Well, there are a couple of different paths available, at least. One that I've seen discussed in case law would be just the district judge just decides de novo whether he's entitled to benefits. Right. That's one remedy for procedural errors. Another would be to say, well, do what was supposed to be done in the first place. Give him a fair opportunity to respond to Dr. Alpert's material and an opportunity presumably to submit some new scans. Right, Your Honor. What do you think is the procedural violation? I mean, the district court could certainly assess this de novo. Either... Both of these are at least theoretically available. I'm asking which you think is correct or the better approach and why. Right, Your Honor. Well, I think the de novo approach would make sense due to the procedural violation. Would that require more discovery? No, Your Honor. I don't think that that would change the discovery. Well, you presumably have to submit some new information, but you'd submit it to the district court rather than to the standard insurance, right? And there might or might not be new scans and so on. Right, Your Honor. With the de novo review, I believe that the record would still be closed due to this being an error. That can't be. Because if the argument is that you didn't get the opportunity to respond to Dr. Alpert's report, it can't be that we... it goes for de novo review and you still don't have the opportunity to submit additional scans or responses to it because I think we could guess where it's going to come out. Right, Your Honor. In that case, I think that the district court probably would allow doctors all that opportunity to respond to Dr. Alpert's report and may remand the case back to the standard for kind of a new assessment of his appeal with that new information he'd be able to submit. Well, okay then. Sorry. Now you're shifting back though to the remedy of basically just do it over again. Tell standard to do it over again as opposed to having the district court do a de novo review of substantive entitlement benefits. Right, Your Honor. These cases are a little tricky with the ERISA and the lack of discovery available and the closure of the administrative record. So, I think that, you know, I think in this case the likely remedy would be a remand or an allowance of doctors all to submit that new information to the standard in response to the peer review report. Did you have a copy of Dr. Budin's report? At what point, Your Honor? During the proceedings below. Yes, yes. What's the difference between Dr. Budin's report and Dr. Alpert's report? Right, Your Honor. Well, Dr. Alpert did rely more on the conclusion of carpal tunnel. She kind of, she did have a bit of a different assessment of Dr. Zoll's medical records and she assessed the records in a way that we would contend is inaccurate and is contrary to that of Dr. Zoll's treating providers. But not so different than Dr. Budin's report? Right, Your Honor. There are some similarities, but yes. There are a lot of similarities, a lot of similarities. And that's why I'm asking, my question basically is what's the practical consequences to not receiving Dr. Alpert's report? Right, Your Honor. Well, I first would just note that ERISA does provide procedural protections for these type of claims and that's something that's been been very important and indicated in the case law. Even if a plan substantially complies with the procedures, it's subservient to the broad goal of ensuring the process and explanation accompanying a denial of benefits is here. Dr. Zoll did not know kind of about really the opinions that Dr. Alpert had in the reliance on the carpal tunnel issue until that report was received. And it did differ enough from Dr. Budin's report that a failure to be allowed to respond to that was deprived Dr. Zoll of a full and fair review of the claim. Did your client ever get any updated scans from the ones that were relied on by the simply wasn't recommended by his doctors because his condition hadn't really changed and it wasn't really to the point that his medical providers were recommending surgery. So it wouldn't be needed at this point for diagnostic or for treatment purposes but for benefits purposes. Right, exactly, Your Honor. And that's something that if we had Dr. Alpert's report and we're kind of seeing the additional information that she was providing, we could have gone out and gotten that updated imaging. Or could do that now. Or could do that now. Yes, Your Honor. All right. Your Honors, if I may also just discuss a bit about the purpose, context and precedent of this regulation as well. Under the prior version of the regulation, the Department of Labor consistently held that a full and fair review requires a claimant to have access to newly generated evidence on appeal. Under that version of the regulation, the claimant was generally required to request that new information. And as such, the Department of Labor changed this regulation to provide for newly generated information to automatically be provided to the claimant. In these cases, this is particularly important because this new evidence generated on appeal in these ERISA disability cases is typically a peer review report from a doctor who has never seen or spoken with the claimant and in many cases never spoke with the claimant's treating provider. As such, it's simply not as credible as an opinion from the claimant's treating provider. And in protecting a claimant's right to respond to such evidence, the Department of Labor noted in its preamble that providing claimants a fair review to respond to this evidence is necessary for a full and fair review. And additionally, as I had mentioned, claimants are generally not able to supplement the administrative record once a decision is made and the claimant needs to pursue with a lawsuit, which means that this cannot be done at a later time. So in light of the purpose of ERISA and the unique procedural aspects of these actions, it's clear that the Department of Labor has made a decision in order to allow claimants a full and fair review through an ability to respond to new evidence generated on appeal. Do you think we need to decide whether the pre-2017 regulation required automatic disclosure? I don't think you need to decide that, Your Honor. That was something that was raised as an alternative argument, but I think it's clear that the current version of the regulation does have that it's necessary for the court to reach that question. Your Honors, so given the plain language of the regulation, this court should reverse the district court's grant of summary judgment to the appellee, and with that I will yield the rest of my time for rebuttal. Okay, thank you very much, Ms. Tilka. We'll next hear from Ms. Herring for the defense. Good morning and may it please the court, Jacqueline Herring on behalf of Standard Insurance Company. Dr. Zall designed the disability plan for his There are specific exceptions, including for radiculopathy and herniated discs, but only if they have specific identified evidence as set forth in the group policy. When Dr. Zall failed to establish that he had the required evidence of radiculopathy or a herniated disc, Standard closed his claim. The district court correctly held that Standard's claim determination was reasonable, not arbitrary and capricious, and that Standard had correctly complied with the applicable ERISA regulation and had not denied Dr. Zall a full and fair review. The district court's judgment in favor of Standard for those reasons should be affirmed. Do you agree that Standard did not apply the current version of H-4 to Dr. Alpert's report? That is correct, Your Honor. Dr. review was ongoing. It was provided after the administrative appeal as required by the regulation that actually applied to Dr. Zall's 2013 claim. That's the operative question here. So walk me through the text of the current regulation and explain to me why it doesn't apply, particularly through And subsection P dovetails off of both the effective date and the applicability date that were published in the Federal Register as part of the Administrative Procedures Act proceedings for the public comment period that was quite extensive in this case. And so what subsection P does is it sets forth between the effective date and the applicability date, that 15-month period of time where there was a transition. Sorry, let's start with P1, right? Except as provided in paragraphs P2, P3, and P4 of this section, this section shall apply to claims filed under a plan on or after January 1, 2002. That text applies to Dr. Zall's claim, correct? It was applied, his claim was filed on or January 1, 2002. But the applicability date of the regulation specifies that it only applies to claims that are first filed after 2018. I'm just trying to look at P1. Yes, sir, P1 makes the entire regulation, again that's part of the with the exceptions that are identified for the new amendments. Because the whole point of... And do you agree that P2 is not applicable? Yes, sir. P3? P3 does not specify H4 and the reason for that is the portions of the regulation that are specified in P3 were completely new amendments to the regulation, whereas P4 already existed in the old regulation. You mean H4? H4, yes, thank you. Yes, H4 already existed in the prior regulation and the amendments in 2018 altered not only H4 itself, but they added subsections 1 and 2 within H4. So you couldn't simply delete H4 from the no provision in the regulation to specify which sections apply to a disability claim because that's what H4 does. If I'm trying to decide in 2020 what my obligations are in reviewing this appeal, I look at P1, this section applies to claims filed that include Dr. Zahl's claim, except as P3 and P4, none of those apply. P4 is one that addresses specifically H4. Yeah, but it doesn't apply to... You've got this... He didn't file his claim between January of 2017 and April of 2018. And all of the guidance that was provided by the specifically prevent any disruption in the current process. Nobody's disrupting anything. We're talking about an appeal being considered in 2020. We've got a procedural change. Is there any reason why Standard could not have complied with H4 in 2020? Standard certainly could have provided a copy of Dr. Zahl's claim. Presumably it was doing so with current claims and appeals, right? With claims that were filed after April 1, 2018. But with a claim that's filed in 2013, you don't sort of change the rules midstream. Why not? All you're doing is changing procedures. There's nothing retroactive about that. It is retroactive because what... Explain that under Land Graph and the distinction that it makes between retroactive substantive liabilities and obligations and procedures going forward. What happens with a claim that's at day 40 with a determination that's needed at day 45? Does that claim that's pending at day 40 now suddenly require different procedures than it had for the first 40 days? And the whole point of this structure with the transitional period was to prevent exactly that and to allow for the change in procedure. A carve-out simply doesn't make sense. There would be no reason to simply carve out 15 months. I understand your point there when you're talking about new claims filed in that period. But when we've gotten around to 2020, the new procedures are in place. There's nothing retroactive about applying them in 2020 to a 2020 appeal for just using those procedures. But it's in fact a 2013 claim. So what? And the applicability date... The text says this section shall apply to these claims. Do I have to go back and look at the Federal Register to figure out that the But the Federal Register is what documents what the public comment process was and why this structure was developed. But this is the structure and I guess I'm looking for a textual response that shows that you weren't obliged to follow H4 in 2020 to this claim. And the response is that while the regulation was undergoing the ongoing public comment, it could not have been in effect. And the reading that plaintiff is advocating in this case would mean that it applies all the way back to a claim that's decided in 2008. Because to your Honor's point, a claim that's decided in 2008 might have been filed before or after 2002. So can now the person... I understand that there might be some situations in which that would be confusing and this is a confusing regulation. But I am looking and it's trying to deal with a lot of complicated situations. But as applied to Dr. Zoll's 2020 appeal, I don't see any problem applying it at all. And I'm sorry but I'll invite a response and then maybe Judge Kirsch's question. And I think that the problem with selectively applying it is then we end up selectively applying it. And the point of the regulation was to again have the continuity, have the adjustment period, and then for claims submitted after April 1, 2018 going forward, that is when the new regulations would apply. Otherwise it does become retroactive and somebody whose claim was denied in 2008 can now come before the court and say, well you said that P1 applies to my claim. The insurer didn't give me a copy of this report. I can't imagine that we would reopen something like that. I would hope not. But if the court decides that this does apply to claims before April 1, 2018, then that's exactly the result that could happen. It would apply to appeals after this regulation took effect. And then that would be adding to what's in the regulation because it would be drawing a distinction that doesn't exist. Because still somebody whose claim was decided before could say, well the Seventh Circuit tells me that this regulation applied to my claim because it was filed after 2002 regardless of when the appeal itself is decided. There is a statute of limitations for filing appeals seeking judicial review of denials, right? Yes, sir. It's a lot shorter than what we're talking about here, right? Yes, sir. Although I suppose someone could say it was newly discovered if the court comes up with a new interpretation. We can worry about that if that happens. Which no other court has found that. Both the First and the Second Circuits have dealt with this, although in footnotes. Footnotes are very cursory. They unfortunately don't give any explanation. Let alone textual analysis. Yes, I agree and that's why we didn't cite them as sort of a precedential. That courts have decided that the new regulation doesn't apply to previously filed claims. But when you look at what the Department of Labor was doing here, it was very clear and the department itself said in extending the applicability date from January to April of 2018, the department specifically said because this is not yet applicable, it's okay for us to do this extension and solicit further public comments. So all of that indicates that this is clearly intended to apply to new claims going forward as published in the Federal Register. Which date are you referring to in the register? Where they extended the date. The one that you think gives you the meaning of this, in essence, that the language doesn't mean what it says. Okay. Every Federal Register that addresses the 2018 amendments has that applicability and effective dates. I'm looking at the list. Okay. And you don't want to be more specific. Okay. Okay. Great. December 19, 2016. October 12, 2017. November 29, 2017. Okay. Thank you. In all the November 2017 provision, that's where the applicability date was extended from January 2018 until April of 2018. And there's some pretty detailed discussion of how this is an appropriate 90-day extension because the statute or the regulation is still up for public comment. It's still being considered. It may still be modified, amended, or changed at any point in time. And so a 30-day extension, or I'm sorry, a 90-day extension until April 1 is the appropriate result. And I do want to correct one other thing. The court had asked when Dr. Zoll was made aware that Dr. Alpert would be filing a report. And there were actually two notifications. The first was on July 30, and the second was on April 20. July 30, the notification was we're sending this out to get a medical report. And the August notification was we now have the report. We will be deciding your claim. So there were two notifications, not just one. So I've got to ask you. The statute says full and fair review, right? Yes, sir. Okay. Suppose we issue an appellate decision in which we reverse. Maybe this case, who knows. But we do it based on factual research that members of this court conduct. Maybe we consult an expert. And we put that information into our opinion and explain this is why we're reversing. Would you feel you've had a fair hearing in that appeal if you never had an opportunity to respond to that I would often not feel as though I'd gotten a full and fair review. But the question here is what does ERISA require and whether Standard complied with what ERISA requires. ERISA requires a full and fair review. Yes. And a lot of claimants, even when you comply with absolutely everything, still feel slighted and cheated if they're not afforded benefit. Sure. And in this case, that's not my question. My question is about procedure, where the obtained privately and disclosed only in the final decision. And I think in the court system, there would be other problems with that. But under ERISA, what the administrator has to do is comply with the regulation. And in this case, the regulation that applied was the one before the 2018 amendments. There was no evidence of any herniated disc, no evidence of radiculopathy, plaintiff clearly knew what evidence was required because their appeal letter is all about those provisions of the policy. They had ample opportunity to provide that evidence. They had ample opportunity to request Dr. Alpert's report if they felt that that was necessary to their full and fair review. They did not... Before your time expires, what was your response to the question? I think you got asked other questions and didn't get to answer it. As to how can this be retroactive if it's a procedural change as opposed to a substantive change? It's not purely procedural in the sense that, well, what happens is additional evidence is generated. And that was one of the key things that generated so much dispute over this particular provision as well as others, is that in a 45-day timeframe, it's very difficult to have this constant back and forth, back and forth, back and forth, because it's not just, here, give us Dr. Alpert's report. Then if plaintiff chooses to respond, we've got new information that then has to go back to the doctor again, and then we have to provide that report. So it was that whole process that was being considered before this amendment, and that generates new evidence, new substantive facts on which the decision has to be made. I don't understand how that's retroactive at all. It's just a difference in procedure, and it's one that you're complying with now, right? Yes. So whatever this problem of endless iterations, whatever that theoretical problem might be, it's being managed, right? Yes, until the regulation is modified again, if and when it's determined it's not being managed very well. Are there current proposals published for revisions? No, sir, not currently, because again, the way that courts and the plan administrators have applied the 2018 amendments is to claims filed as of April 1, 2018, going forward. Thank you. Thank you very much, counsel. Rebuttal, Ms. Tocco? Two minutes. Just a couple of brief points on rebuttal, Your Honor. First, I just want to note that counsel for the standard does not contend that this regulation is ambiguous. As such, this court needs to look at the plain language at issue here, and the court does not need to consult the rulemaking record, as that is only done when the language is ambiguous. Additionally, the plain text of this regulation does supersede the preamble, which counsel for the standard raised as well. Lastly, I just want to discuss as well just a little bit about the timeline. So Dr. Zoll filed his claim in 2013. There was an initial appeal done around 2014, and then benefits were turned on, and then he was paid all the way through to 2019, at which point his claim was denied, and we proceeded with the appeal. As such, this is not a case where the procedures are really changing midstream or anything like that, or where there's there's anything going retroactive. Essentially, the standard only had to do what they were already doing for a claim that would be denied in 2019. It's essentially the exact same thing as Dr. Zoll's case. It just so happens that he filed his initial claim a bit earlier. So essentially, the standard only had to do for Dr. Zoll what they were already doing for their claims that were filed more recently. So in conclusion, with the plain language of the regulation and its purpose, context, and precedent, it is clear that it does apply to Dr. Zoll's claim, and he was denied a full and fair review because he was not provided with this peer review report, nor given a chance to respond to the same before the standard issued its denial. Thank you very much for your time. All right, our thanks to both counsel. The case is taken under advisement.